UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| EARL DIXON, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>JEFFERSON CAPITAL SYSTEMS, LLC and UNIFIN, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)   No. 1:19-cv-02457-JMS-DML<br>)<br>)<br>)<br>)<br>) |

## **ORDER**

Plaintiff Earl Dixon, individually and on behalf of others similarly situated, initiated this action against Defendants Jefferson Capital Systems, LLC ("Jefferson Capital") and Unifin, Inc. ("Unifin") alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and the Indiana Deceptive Consumer Sales Act ("IDCSA"), Ind. Code § 24-5-0.5-3. [Filing No. 125.]  Mr. Dixon has filed a Motion for Class Certification, in which he seeks to represent two classes of similarly situated individuals.[1] [Filing No. 112.]   Additionally, Mr. Dixon has filed a Motion to Compel Jefferson Capital Systems, LLC to Produce.  The Court will address both motions.

---

[1] Defendants have responded to Mr. Dixon's motion and sought leave to file a supplemental brief. [Filing No. 150.]   Because the Court ultimately finds that Mr. Dixon's Motion for Class Certification should be denied, it **DENIES** Defendants' Motion for Leave to File A Supplemental Brief, [150], **AS MOOT**.

# I.
## MOTION FOR CLASS CERTIFICATION

### A.    Standard of Review

Class actions serve a unique role in modern civil litigation. As the Seventh Circuit has explained:

> The class action is an ingenious procedural innovation that enables persons who have suffered a wrongful injury, but are too numerous for joinder of their claims alleging the same wrong committed by the same defendant or defendants to be feasible, to obtain relief as a group, a class as it is called. The device is especially important when each claim is too small to justify the expense of a separate suit, so that without a class action there would be no relief, however meritorious the claims.

*Eubank v. Pella Corp.,* 753 F.3d 718, 719 (7th Cir. 2014).  To achieve certification, a proposed class must meet the requirements of Federal Rule of Civil Procedure 23(a)—numerosity, typicality, commonality, and adequacy of representation—and one of the requirements listed in Rule 23(b).  *Messner v. Northshore Univ. Health System*, 669 F.3d 802, 811 (7th Cir. 2012).

The Rule 23 requirements are more than "a mere pleading standard."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  The moving party "must affirmatively demonstrate" that the prerequisites exist "in fact."  *Id.* at 349.  As such, courts do not take the moving party's allegations at "face value" but rather "rigorously analyze" the requirements of Rule 23.  *Howard*, 989 F.3d at 597 (citing *Beaton v. Speedy PC Software,* 907 F.3d 1018, 1025 (7th Cir. 2018)).

This analysis "must go beyond the pleadings and, to the extent necessary, take evidence on disputed issues that are material to certification."  *Beaton*, 907 F. 3d at 1025.  The Supreme Court has recognized that this analysis will often "entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped."  *Dukes,* 564 U.S. at 351.  "Failure to meet any of [Rule 23's] requirements precludes class certification."  *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008).

### B.     Background

####      1.     *Unifin's Letter to Mr. Dixon*

This case arises from a collection letter that Mr. Dixon received from Defendants.  [Filing No. 125.]  Mr. Dixon previously owed a debt to Sprint Services for $1,130.29, which was acquired by Jefferson Capital.  [Filing No. 125 at 22.]  Jefferson Capital contracted with Unifin to collect Mr. Dixon's debt.  [Filing No. 125 at 22; Filing No. 125-1 at 2.]

On August 23, 2018, a Unifin representative spoke with Mr. Dixon on the telephone regarding the debt.  [Filing No. 126-1.]  During the conversation, Mr. Dixon requested that Unifin send him a letter via email to "show [him] what the debt was."  [Filing No. 126 at 2.]  In the relevant part, the letter provided as follows:

ID Number: ██████
Current Creditor: **JEFFERSON CAPITAL SYSTEMS, LLC**
Original Creditor: **SPRINT SERVICES**
Account Number:
Original Account Number: ████████
Total Current Balance: **$1130.29**

Dear Sir/Madam:

This letter serves as a second notice. The balance in full is due today. Please contact us at your earliest convenience to discuss a payment plan.

This notice is regarding your account originally with SPRINT SERVICES that is currently with Unifin, Inc. Nothing contained within this letter changes or in any way limits any of your legal rights, including your rights as set forth in our first letter to you about this account. This communication is from a debt collector. This is an attempt to collect a debt. Any information will be used for that purpose.

[Filing No. 125-1.]  The letter does not disclose that the debt was beyond the relevant statute of limitations for enforcing a delinquent debt, or that any payment made on the debt would restart that statute of limitations.  [Filing No. 125-1.]  Based on Defendants' representations, Mr. Dixon paid $150.00 to Unifin and set up a payment arrangement for continued payments.  [Filing No. 130 at 1.]

3

2.     *Unifin's Subsequent Debt Collection Activities*

At the time that the letter was sent to Mr. Dixon, Unifin did not have a practice of sending templated collection letter campaigns, but sometime shortly thereafter, Unifin began doing so. [Filing No. 126-8 at 2.] Utilizing a mail merge system, the templates were automatically populated with a statute of limitations disclosure if Unifin's records indicated that the debt was outside of the statute of limitations. [Filing No. 169-2 at 19.] If the debtor was in a state that does not require a specific disclosure, such as Indiana, Unifin's system would generate one of two generic statute of limitations disclosures. [Filing No. 169-2 at 35.]

If the debt was outside the statute of limitations and had previously been reported to the credit reporting agencies, the letter template would include the following disclosure: "[t]he law limits how long you can be sued on a debt. Because of the age of your debt, [your creditor] may not sue you for it. If you do not pay the debt, [your creditor] may [continue to] report it to the credit reporting agencies [as unpaid]." [Filing No. 170 at 3.] If the debt was outside the statute of limitations and had not been reported to the credit reporting agencies, the letter template would include the disclosure that: "[t]he law limits how long you can be sued on a debt. Because of the age of your debt, [your creditor] may not sue you for it, and [your creditor] may not report it to any credit reporting agency." [Filing No. 170 at 3.]

During the proposed class period, Unifin sent 10,500 templated collection letters to individuals within the state of Indiana on accounts that were in default for more than six years at the date of the communication. [Filing No. 112; Filing No. 115-8.] Unifin attests that these letters were nearly all templated letters that included the disclosures described above. [Filing No. 170 at 3.] Unifin maintains that it has "never had a practice of sending letters to consumers on out of statute debts using templates that did not include a disclosure" and attests that a manual review of

its records determined that Unifin only sent "one letter in the form of the letter sent to [Mr. Dixon]

on accounts associated with Indiana addresses where the debt was in default for more than six

years—that was [Mr.] Dixon's letter."  [Filing No. 126-8 at 2; Filing No. 170 at 4.]  There is no

evidence or allegation that Mr. Dixon was sent a templated letter.

> 3.    *The Tangled Procedural History*

Throughout the course of this litigation, this case has been mired in procedural missteps by

all parties involved, as outlined below, which has rendered the Court's review unnecessarily

cumbersome and placed an unnecessary strain on judicial resources.  The parties are cautioned to

avoid taking this flawed approach in the future.

On June 18, 2019, Mr. Dixon filed the present action seeking recovery under the FDCPA,

on behalf of himself as well as a class of consumers that he initially described as:

> all persons within the State of Indiana who, within one year prior to filing this
> action, [who have been contacted by or] have been sent a letter by or on behalf of
> JEFFERSON CAPITAL concerning an obligation to pay money arising out of an
> obligation to Sprint after six years in time had passed since the date the obligation
> was initially owed, without JEFFERSON CAPITAL or its agent disclosing that any
> payment on the debt would strip the consumer of his or her statute of limitation
> defense.

[Filing No. 1 at 11.]  Despite seeking "actual damages" in his Complaint, Mr. Dixon admitted on

April 1, 2020, in response to Defendants' Requests for Admissions, that he "suffered no

pecuniary/financial loss as a result of the alleged conduct," but that he was "planning to set up a

payment arrangement."  [Filing No. 1; Filing No. 126-4 at 1.]

On September 13, 2019, the Court approved the parties' Joint Case Management Plan,

which provided, among other things, that "discovery relating to liability issues shall be completed

by April 17, 2020."  [Filing No. 25.]  On March 31, 2020, Mr. Dixon filed a motion seeking

additional time to respond to Defendants' discovery requests and to extend the discovery deadlines, which the Court extended to June 17, 2020. [Filing No. 45; Filing No. 46.]

One week after the passage of his new discovery response deadline, Mr. Dixon sought a retroactive extension of time to respond to discovery, representing that "Defendants do not object to an extension of time for [Mr. Dixon] to respond to Discovery." [Filing No. 47.] Defendants responded that, in fact, they had not indicated a position on Mr. Dixon's motion either way. [Filing No. 48.] The Court admonished Mr. Dixon's counsel, noting that the Court "would deny his motion, but for the fact that denial would multiply the delay and expense for both parties and would create additional burden for the Court." [Filing No. 49.]

On June 5, 2020, the Court extended the discovery deadlines a third time to August 17, 2020 at Mr. Dixon's request. [Filing No. 61.] The Court subsequently held a conference with the parties regarding discovery disputes on June 12, 2020, [Filing No. 63], and again on July 22, 2020. [Filing No. 80.]

On March 3, 2021, the Court ordered the parties to confer and file a proposed Amended Case Management Plan by March 12, 2021. [Filing No. 96.] The parties did not file their proposed Amended Case Management Plan until March 15, 2021. [Filing No. 101.] The same day, the Court held a third discovery conference with the parties and declined to enter the parties' proposed Amended Case Management Plan because "it does not address class certification briefing, does not propose a realistic trial date, and includes extraneous matters." [Filing No. 102.]

Mr. Dixon then filed a motion requesting an extension of time to submit the Proposed Amended Case Management Plan, [Filing No. 103], which the Court struck for failure to comply with Local Rules 5-1, 6-1, and 7-1. [Filing No. 104.] On March 31, 2021, the Court moved the

discovery deadline for the fourth time, upon the parties' request, to July 14, 2021.  [Filing No. 106.]

On June 14, 2021, Mr. Dixon filed his Motion for Class Certification, wherein he sought to represent the following classes:

> FDCPA Class: all natural persons with an address in the State of Indiana, to whom a letter was sent by Unifin, Inc., on behalf of Jefferson Capital Systems, LLC, from June 18, 2018, through the date this class is certified, to collect a consumer debt where the debt was in default for more than six years at the time the letter was sent.

> IDCSA Class: all natural persons with an address in the State of Indiana, to whom a letter was sent by or on behalf of Jefferson Capital Systems, LLC, from June 18, 2017, through the date this class is certified, to collect a consumer debt where the debt was in default for more than six years at the time the letter was sent.

[Filing No. 112 at 6.]

Despite asserting a new cause of action under the IDCSA, new class definitions, and a new legal theory against Unifin in his Motion for Class Certification, Mr. Dixon did not receive leave to amend his initial complaint until July 13, 2021 -- over a month after he moved for class certification under his new theory of his case.  [Filing No. 124.]  Around this time, the Court yet again moved the discovery deadline for the fifth time, this time at Defendants' request, until July 23, 2021.  [Filing No. 123.]

On the day that discovery closed and after Defendants responded to his Motion for Class Certification, Mr. Dixon moved to amend his responses to Defendants' request for admissions. [Filing No. 130.]  Despite over two years of litigation and extensive discovery in this case, Mr. Dixon specifically sought to clarify that his previous statement that he "suffered no pecuniary/financial loss as a result of the alleged conduct" was incorrect and that he had in fact "paid $150.00 to Unifin during a collection call . . . [as well as] incurred $6.37 [in] costs for sending the certified mail letter to Jefferson Capital."  [Filing No. 130 at 2.]

7

For their part, despite repeatedly referring to Unifin's letter templates in their briefing, [Filing No. 142], Defendants did not include these documents as part of the record for purposes of the class certification briefing.  Rather, the Court ultimately ordered Unifin to submit the templates for the Court's review after Unifin confoundingly sought *ex parte* disclosure.  [Filing No. 166.] Given that the contents of the letter templates have become a central issue in the class certification briefing, the Court finds it perplexing that Defendants would not include the evidence that they rely upon as part of their briefing.

On August 10, 2021, Mr. Dixon, in his reply to the instant motion for class certification, yet again narrowed his class definition without the Court's leave and in disregard of the considerable litigation that preceded the reply.  [*Compare* Filing No. 142 at 3 ("Plaintiff and all members of the Classes who paid monies to the Defendants on debts that were time barred . . . .") *with* Filing No. 112 ("[A]ll natural persons with an address in the State of Indiana to whom a letter was sent . . .").]

Moreover, Mr. Dixon acknowledges that no discovery has been completed regarding the number of individuals who made payments to Defendants or the IDCSA claim, which has a longer statute of limitations than the FDCPA claim.  [Filing No. 167 at 15; Filing No. 112 at 18-25 (noting that "Unifin admits there are approximately 10,500 persons, who meet the FDCPA Class definition. We may logically conclude the IDCSA Class is larger."); see also Filing No. 126 at 4.]

The Court takes seriously its obligation to administer its duties promptly and efficiently. See, Guide to Judiciary Policy, Vol. 2A, Ch. 2.  But the parties' conduct in this case has placed a needless strain on judicial resources and caused unnecessary cost and delay.  Simply put, as Defendants acknowledged, "the Parties have failed the Court in this case."  [Filing No. 51 at 2.]

C.      **Discussion**

      *1.      Article III Standing*

In their response to Mr. Dixon's Motion for Class Certification, Defendants argue that the members of Mr. Dixon's proposed class lack standing because every class member must have suffered an injury in fact in order to recover individual damages, and Mr. Dixon has not defined his classes in "terms of payment of the debt." [Filing No. 126 at 12.]

In his reply, Mr. Dixon responds by redefining his class to those who "suffered an actual monetary loss." [Filing No. 142 at 3-4.] Mr. Dixon argues that these monetary losses are injuries-in-fact sufficient to support Article III standing. [Filing No. 142 at 3-4.] Mr. Dixon also argues that the FDCPA creates a right to be free from false or misleading representations from debt collectors sufficient to create standing. [Filing No. 142 at 3-4.]

To have standing to sue in federal court under Article III, a plaintiff must establish: "(1) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) that the injury was likely caused by the defendant; and (3) that the injury would likely be redressed by judicial relief." *Ramirez*, 141 S. Ct. at 2190 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)). The Supreme Court in *Ramirez* noted that:

> an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law . . . But under Article III, an injury in law is not an injury in fact.

*Ramirez*, 141 S. Ct. at 2205

      a.      Standing under the FDCPA

The FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The FDCPA sets forth a non-exhaustive list of examples of conduct that violates this

9

prohibition, including "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken," 15 U.S.C. § 1692e(5), and "[t]he false representation of the character, amount, or legal status of any debt," 15 U.S.C. § 1692e(2)(A).

The statute of limitations in Indiana for enforcing delinquent debts is six years from the date of the last activity. Ind. Code § 34-11-2-9; *Holt v. LVNV Funding,* LLC, 147 F. Supp. 3d 756, 760 (S.D. Ind. 2015). However, sending a letter in an "attempt to collect a stale debt does not, in and of itself, violate the FDCPA." *Holt,* 147 F. Supp. 3d at 760; *McMahon v. LVNV Funding, LLC,* 744 F.3d 1010, 1020 (7th Cir. 2014) ("We do not hold that it is automatically improper for a debt collector to seek re-payment of time-barred debts; some people might consider full debt re-payment a moral obligation, even though the legal remedy for the debt has been extinguished.").

A debt collection letter that provides an unambiguous warning regarding the statute of limitations does not violate the FDCPA. *Pantoja v. Portfolio Recovery Assocs., LLC,* 852 F.3d 679, 685–86 (7th Cir. 2017) ("[W]e believe the FDCPA prohibits a debt collector from luring debtors away from the shelter of the statute of limitations without providing an unambiguous warning that an unsophisticated consumer would understand. We will not attempt to prescribe exact language for debt collectors to use when writing such letters, but the language would need to be clear, accessible, and unambiguous to the unsophisticated consumer.")

The Seventh Circuit recently addressed the application of *Ramirez* to claims under the FDCPA in *Wadsworth v. Kross, Lieberman & Stone, Inc.,* 12 F.4th 665 (7th Cir. 2021). In *Wadsworth*, the Seventh Circuit held:

> We have repeatedly recognized a fundamental point: When a debt collector fails to inform a debtor of his statutory rights, then the debtor has suffered a concrete injury only if . . . [the debt collector's] failure to provide notice of [the debtor's] statutory rights caused [the debtor] to suffer a harm identified by the [FDCPA], such as paying money [that the debtor] did not owe or would have disputed.

10

*Id.* at 668 (internal citations omitted).  The Seventh Circuit further noted that confusion, stress, anxiety, annoyance, and intimidation are examples of "the quintessential abstract harms that are beyond [a federal court's] power to remedy."  *Id.* at 668.

While *Wadsworth* is a recent decision, the Court takes note it is just one of a "bevy of recent [Seventh Circuit] decisions on FDCPA standing" requiring concrete harm for standing to bring an FDCPA claim.  *Id.* at 669; *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 339 (7th Cir. 2019)[2] ("In sum, [Plaintiff] alleged nothing more than a bare procedural violation of the Fair Debt Collection Practices Act.  That is insufficient for purposes of Article III."); *Larkin v. Finance System of Green Bay, Inc.*, 982 F.3d 1060 (7th Cir. 2020); *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069, 1072 (7th Cir. 2020) ("[T]his court has recently held that the asserted violation of a substantive right conferred by the Fair Debt Collection Practices Act does not guarantee the plaintiff's standing."); *Nettles v. Midland Funding LLC*, 983 F.3d 896, 900 (7th Cir. 2020) (Finding no standing when plaintiff's "only injury is receipt of a noncompliant collection letter.")

      b.   <u>Mr. Dixon's Standing</u>

Mr. Dixon does not attempt to distinguish his case from the decisions identified above.  Rather, he relies on decisions from this Circuit and others[3] issued prior to the Seventh Circuit's opinion in *Casillas* to support his position.  [Filing No. 142 at 3.]

---

[2] The Court notes that the opinion in *Casillas* was issued two weeks prior to the date that Mr. Dixon initiated this action.  [Filing No. 1.]

[3] Mr. Dixon cites to the Eleventh Circuit's opinion in *Church v. Accretive Health, Inc.,* 654 Fed. Appx. 990, 994 (11th Cir. 2016), to support the contention that violations of the FDCPA constitute concrete injuries in fact for purposes of Article III standing.  However, the Court notes that recent Eleventh Circuit precedent comports with the approach adopted in *Casillas. Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020) (Finding no standing where Plaintiffs "have identified no comparable downstream consequences from their receipt of allegedly

Before he amended his original response to Defendants' Request for Admission No. 1, Mr. Dixon admitted that he "suffered no pecuniary/financial loss as a result of the alleged conduct by Defendants." [Filing No. 130 at 1.]  In the absence of any other allegation of concrete injury, the admission defeated standing.  However, Mr. Dixon was permitted to amend his response. [Filing No. 147 at 5.]  He now asserts that he paid $150.00 to Unifin toward a time-barred debt during a collection call and set up a payment arrangement for continued payments based on Defendants' misrepresentations.  [Filing No. 130 at 1.]  This asserted harm is sufficient to establish his standing to pursue an FDCPA claim.

That said, the Court notes that Mr. Dixon did not seek to correct his response to Request for Admission No. 1 until after he sought certification of the proposed class, [Filing No. 112], after Defendants responded to his Motion for Class Certification, and most significantly, after discovery related to his originally-proposed class had closed.  [Filing No. 126.]  Given that standing is a threshold issue, Mr. Dixon should have taken steps to resolve this question at the outset of this case.  *Nettles v. Midland Funding LLC*, 983 F.3d 896, 899 (7th Cir. 2020) (Noting that standing to sue "is jurisdictional").

  c. <u>The Originally Proposed Class Members' Standing under the FDCPA and Attempt to Amend on Reply</u>

Mr. Dixon jettisons his originally-proposed class definition in his reply, narrowing his class definition to "all members of the Classes who paid monies to the Defendants on debts that were time barred," [Filing No. 142 at 3], which he alleges distinguishes his case from *Ramirez*.  Further,

---

misleading communications that failed to mislead.  Absent any such concrete impact, they can complain only about *receiving* information that had no impact on them.") (emphasis original).  Mr. Dixon's counsel are reminded that "[l]awyers are not entitled to ignore controlling, adverse precedent."  *Jackson v. City of Peoria*, 825 F.3d 328, 331 (7th Cir. 2016).

Mr. Dixon argues that the FDCPA creates a right to be free from false or misleading representations from debt collectors sufficient to create harm for purposes of standing.  [Filing No. 142 at 3-4.]

The Supreme Court in *Ramirez* declined to address "the distinct question whether every class member must demonstrate standing *before* a court certifies a class."  *Ramirez*, 141 S. Ct. at 2208 n.4 (emphasis in original).  However, the Seventh Circuit has previously held that, at the certification stage, as long as one member of the proposed class has a plausible claim that he suffered damages, the requirement of standing is satisfied.  *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) ("How many (if any) of the class members have a valid claim is the issue to be determined *after* the class is certified.") (emphasis original).

Nevertheless, the Court notes that Mr. Dixon's new proposed class is narrower than what he initially proposed for certification.  [*Compare* Filing No. 142 at 3 ("Plaintiff and all members of the Classes who paid monies to the Defendants on debts that were time barred . . . .") *with* Filing No. 112 ("[A]ll natural persons with an address in the State of Indiana to whom a letter was sent . . .")][4]  The Court is mindful that amendments on reply are rightly disfavored, particularly because they afford the respondent no opportunity to be heard.  *Hussein v. Oshkosh Motor Truck Co.,* 816 F.2d 348, 360 (7th Cir. 1987) (Posner, J., concurring) ("A reply brief is for replying, not for raising a new ground" not advanced in the opening brief); *McFarlane v. Carothers*, 2018 WL 4625660, at *3 (S.D. Ind. Sept. 27, 2018) ("We will not consider Defendant's objection [to certification of a class] raised for the first time in reply."); *Autotech Techs. Ltd. P'ship v. Automationdirect.com,*

---

[4]  This altered class definition is consistent with Mr. Dixon's Amended Initial Disclosures, which were also amended after Mr. Dixon filed his Motion for Class Certification.  [Filing No. 140-7 at 3 ("Plaintiff will rely upon . . . the amounts collected on time-barred debts, in order to calculate the damages [under the FDCPA and the IDCSA].")]

*Inc.*, 235 F.R.D. 435, 437 (N.D. Ill. 2006) (observing that "[l]oading-up on a reply brief effectively results in a one-sided presentation, which is hopelessly inconsistent with the very premise on which the adversary system is based."); see also *G.M. Sign, Inc. v. Brink's Mfg. Co.,* No. 09 C 5528, 2011 WL 248511, at *4 (N.D. Ill. Jan. 25, 2011) ("District courts typically, though not invariably, hold a plaintiff seeking class certification to the definition espoused in the relevant complaint.")

Accordingly, the months of discovery and extensive briefing should not be wasted because a plaintiff or his counsel finally figures out the deficiencies in his proposed class definition. The Court declines to allow this sloppy practice to succeed and will consider only the original proposed class definition. The original definition fails to include any legally cognizable assertion of injury in fact, and the Court therefore **DENIES** class certification for lack of class standing.

But even if the Court were to consider Mr. Dixon's amended class definition limiting the class to those potential class members "who paid monies to the Defendants on debts that were time barred," [Filing No. 142 at 4], Mr. Dixon's request for class certification would still fail. In the interest of completeness, the Court will address whether Mr. Dixon has established that the proposed amended class meets the Rule 23 requirements.

2.    *Whether an Identifiable Class Exists*

In addition to the class certification prerequisites specifically enumerated in Rule 23, it is Mr. Dixon's burden to prove "that the class is indeed identifiable as a class," meaning that the class must be definite enough that the class can be ascertained. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006) (internal citations omitted). To establish that a class is ascertainable, the party seeking certification must purpose a class definition that is (1) precise, (2) defined by objective criteria, and (3) not defined in terms of success on the merits. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015).

The parties do not address whether the class is identifiable in their briefs.  [Filing No. 112; Filing No. 126; Filing No. 142.]  While the proposed class might possibly be identifiable, there is no evidence of the composition of the class, given its belated identification.  Mr. Dixon has waived any argument in support of ascertainability, by failing to raise it. Therefore, the Court finds that Mr. Dixon's amended proposed class definition is insufficient to establish an identifiable class.

### 3.      Rule 23(a) Requirements

The Court notes at the outset that many of the parties' arguments relate to Mr. Dixon's original class definition, which the Court has found cannot support a viable class action. Accordingly, as noted, the Court will only address Mr. Dixon's revised proposed class.

Mr. Dixon argues that each of the Rule 23 requirements have been met.  He argues that numerosity, commonality, and typicality are satisfied because "defendants have engaged in standardized conduct towards members of the proposed class" by sending "each class member a standardized, templated, collection letter which violated the FDCPA in the same manner (i.e., by failing to identify the creditor/owner of the debt in an unambiguous manner)."  [Filing No. 112 at 19-21.]  He also argues that adequacy has been satisfied because he has "retained counsel experienced in litigating class actions and complex consumer claims and he does not have any conflicting interests with the class members."  [Filing No. 112 at 22.]  In addition to satisfying each of the Rule 23(a) prerequisites, Mr. Dixon argues that his proposed class satisfies Rule 23(b)(3)[5] because each class member's claim would likely be too small to vindicate through an

---

[5] Mr. Dixon refers to Rule 23(b)(2) in his motion but makes no effort to explain the application of Rule 23(b)(2) to his case.  [Filing No. 112 at 23.]  Therefore, the Court finds any arguments under Rule 23(b)(2) are waived for lack of development.  See *Lachman v. Ill. State Bd. of Ed.*, 852 F.2d 290, 291 n. 1 (7th Cir.1988) (noting that "an issue expressly presented for resolution is waived if not developed by argument" (citation omitted)).

individual suit, and that a class action presents an "efficient and effective way to obtain relief to individual class members." [Filing No. 112 at 23

Defendants respond that Mr. Dixon has not satisfied any of the Rule 23 requirements because his letter was sent under "unique circumstances."[Filing No. 126 at 14.]  In support, Defendants argue that Unifin "only sent one letter in the form of the letter sent to [Mr.] Dixon on accounts associated with Indiana addresses where the debt was in default for more than six years—that was [Mr.] Dixon's letter." [Filing No. 126 at 9; Filing No. 126-2 at 2; Filing No. 126-3 at 2.] According to Defendants, the remaining letters were sent from templates which included disclosures regarding the statute of limitations.  [Filing No. 126-8 at 7.]  Therefore, Defendants argue, there "are no common issues of fact or law, typicality is not present, and individual issues will predominate this case." [Filing No. 126 at 14.]  Defendants also argue that adequacy has not been established because the retainer agreement between Mr. Dixon and his counsel requires Mr. Dixon to pay his attorneys' fees and costs if the case is resolved in any other form than as a class action, if the case is "not successful," or if he declines a settlement offer against the advice of his attorneys.  [Filing No. 126 at 18.] Finally, Defendants argue that Mr. Dixon's purported class fails under Rule 23(b)(3) because "individualized inquiries would be necessary to determine if any of the class members had a similar claim" and thus a class action is not superior to other available methods of resolving these claims.[6]  [Filing No. 126 at 22.]

---

[6] Defendants also raise arguments regarding the relation back of Mr. Dixon's newly added IDCSA claims.  [Filing No. 125 at 14 ("A class encompassing all persons who were sent a letter like the one at issue from June 18, 2017, through the present, then, would present an arguable statute of limitations defense for members who were sent letters before May 13, 2019—more than two years before [Mr.] Dixon raised these IDCSA claims.")]  Because the Court has determined that class certification is not appropriate, it declines to address this issue at this time.

Mr. Dixon replies that the Rule 23 requirements are met because the letter that he received is a "demonstrative sample of Unifin's collection letters sent to Indiana residents during the class period." [Filing No. 142 at 9.] Mr. Dixon argues that the Rule 23 requirements have been satisfied because he received the same collection letters, was subject to the same debt collection actions, and his interests are not antagonistic to or in conflict with the class. [Filing No. 142 at 16.]

A class action may only be certified if the putative class action meets each of the Rule 23(a) prerequisites: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a). The Court will consider each of the Rule 23(a) requirements in turn.

### a. Numerosity

Rule 23(a)(1) requires that, in order for a class to be certified, it must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[T]here is no magic number that applies to every case, [but] a forty-member class is often regarded as sufficient to meet the numerosity requirement." *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017). However, even for a large group, numerosity may fail if the moving party fails to address why joinder would be impracticable. *Id.* at 860-61; *see also Pruitt v. City of Chicago, Illinois,* 472 F.3d 925, 926 (7th Cir. 2006) ("Plaintiffs argue at length that all other requirements of Rule 23 have been satisfied, and maybe that's so, but if joinder would be practical then the other criteria don't matter.") While "mere speculation" and "conclusory allegations" regarding the class size will not support a conclusion that joinder of members would be impractical, *Arreola,* 546 F.3d at 797, "[a] court must rely on simple common sense when determining whether a class size meets the numerosity requirement." *Hizer v. Pulaski Cnty., Ind.*, 2017 WL 3977004, at *4 (N.D. Ind. 2017).

With respect to the FDCPA proposed class, Mr. Dixon has wholly failed to establish numerosity, or address why the joinder of the absent class members would be impracticable in this case.  [Filing No. 112; Filing No. 142.]  Further, Mr. Dixon has made no showing whatsoever as to the number of individuals who meet his amended class definition.  [Filing No. 142.]  It is possible that no one else in his proposed class made a payment and, thus, suffered an injury in fact.

Similarly, Mr. Dixon has offered no evidence, beyond pure speculation, regarding the number of individuals in the IDCSA class.  [Filing No. 112 at 18.]  It is Mr. Dixon's burden to establish the size of the putative class, and he has failed to do so.  *Fonder v. Sheriff of Kankakee Cty.,* 823 F.3d 1144, 1147 (7th Cir. 2016) ("A class defined early in a suit cannot justify adjudicating hypothetical issues rather than determining the legality of what actually happen[ed].  The class definition must yield to the facts, rather than the other way 'round.")

Defendants argue that Mr. Dixon is a "class of one." [Filing No. 126 at 1.]  Based on the evidence before it, the Court agrees.  Mr. Dixon has not affirmatively demonstrated that any other members of his proposed class exist other than himself and, therefore, he has failed to satisfy Rule 23(a)(1)'s numerosity requirement.

b.   Commonality and Typicality

Additionally, Rule 23(a) necessitates a demonstration of commonality and typicality.  Fed. R. Civ. P. 23(a).  Commonality requires a "common contention" that is "capable of class wide resolution."  *Dukes,* 564 U.S. at 350.  Typicality requires that Mr. Dixon's claims "arise[ ] from the same event or practice or course of conduct that gives rise to the claims of other class members and [are] based on the same legal theory."  *Lacy v. Cook Cnty., Ill.,* 897 F.3d 847, 866 (7th Cir. 2018).  These requirements are "interrelated" and "tend to merge."  *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 158 n.13 (1982).  As such, commonality and typicality often will rise or fall together.

18

*Howard v. Cook Cty. Sheriff's Off.*, 989 F.3d 587, 598 (7th Cir. 2021) ("The same basic defects doom the class on each front." (internal citations omitted.))

Courts in this Circuit regularly grant class certification for FDCPA claims that arise from standardized conduct. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998); *Johnson v. Enhanced Recovery Co., LLC*, 325 F.R.D. 608, 611 (N.D. Ind. 2018) (finding commonality based on "[t]he question of FDCPA compliance posed here by the same form letter sent to 39,000 debtors"); *Smith v. GC Servs. Ltd. P'ship*, 2017 WL 3017272, at *3 (S.D. Ind. July 17, 2017) ("Here, Plaintiff's FDCPA claims are based on the same form debt collection letter sent to 118 members of the putative class").  However, class certification has been rejected in FDCPA cases where, as in Mr. Dixon's case, the moving party provides no proof that anyone else was subjected to the same conduct.  *Berryhill v. Enhanced Recovery Co. LLC*, 2019 WL 2325999, at *4 (N.D. Ill. 2019) (denying class certification where plaintiff "provides no proof that anyone else received the same letter.")

As discussed above, Mr. Dixon has offered no evidence regarding payments on stale debts by his purported class members or that he received one of the templated letters he relies upon.  [Filing No. 112; Filing No. 142.]  The evidence before the Court shows that Mr. Dixon was the only individual in the proposed class that received a collection letter that did not include an appropriate statute of limitations disclaimer, who also made a payment.  [Filing No. 126 at 9; Filing No. 126-2 at 2; Filing No. 126-3 at 2; Filing No. 126-8 at 7.]  Because the receipt of a letter which attempts to "collect a stale debt does not, in and of itself, violate the FDCPA," Mr. Dixon's claims and the claims of his proposed class members present significantly different hurdles to recovery.  *Holt*, 147 F. Supp. 3d at 760.  Therefore, Mr. Dixon has failed to demonstrate typicality and commonality.  [Filing No. 126 at 9.]

c.     Adequacy

The final Rule 23(a) requirement is adequacy.  Fed. R. Civ. P. 23(a).  Adequacy considers if both the named plaintiff and class counsel will "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).

Concerning the adequacy of the named plaintiff, the Court acknowledges Mr. Dixon's stated belief that he can adequately represent the absent members of the class.  However, Mr. Dixon has contractually obligated himself for fees and costs if this case is resolved in any manner other than a class action, if the case is not successful, or if he declines a settlement offer against the advice of his attorneys.  [Filing No. 126 at 18.]  During his deposition, Mr. Dixon expressed doubts regarding his ability to pay his attorneys' fees and costs if required to do so.  [Filing No. 126-5 at 48-49.]

Courts within this Circuit have recognized that a "class representative cannot protect the class against the potentially divergent interests of class counsel if [he] is contractually obligated to follow counsel's advice on settlement."  In re Ocean Bank, 2007 WL 1063042, at *6 (N.D. Ill. 2007).  As such, the Court has serious doubts regarding Mr. Dixon's practical ability to independently act as a fiduciary of the class in light of his potential liability to class counsel.  Therefore, Mr. Dixon has rendered himself inadequate as a class representative.

Finally, regarding the adequacy of class counsel, the Court acknowledges that Mr. Dixon has retained counsel with some experience in cases involving class action and consumer protection matters.  [Filing No. 113; Filing No. 114; Filing No. 115.]  However, counsel's performance has not borne out the value of that experience in this case.  As outlined above, this case has involved an unnecessarily protracted procedural history.  This, coupled with Mr. Dixon's shifting theory of his case and flawed evidentiary assertions, raise doubt regarding the work that counsel has done

20

to identify and investigate potential claims in this action.  This point is most underscored by counsel's amendment of the class definition on reply and the dearth of evidence presented concerning the composition of the amended proposed class.

Additionally, the Court is concerned that class counsel has functionally contracted away Mr. Dixon's ability to act as an independent fiduciary of the class through the retainer agreement identified above.  [Filing No. 126 at 18.]  A class representative "must protect the interests of the class, placing them above his own personal interests and the interests of class counsel." *Murray v. E\*Trade Fin. Corp.*, 240 F.R.D. 392, 399 (N.D. Ill. 2006).  As such, "[t]here ought therefore to be a genuine arm's-length relationship between class counsel and the named plaintiffs." *Redman v. RadioShack Corp.,* 768 F.3d 622, 638 (7th Cir. 2014).  The Court has doubts, based on Mr. Dixon's own testimony regarding his ability to pay, [Filing No. 126-5 at 48-49], that such a relationship exists here and considers this information "pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Reliable Money Order, Inc. v. McKnight Sales Co.,* 704 F.3d 489, 498 n.7 (7th Cir. 2013).  Because of counsel's conduct in this case and counsel's retainer agreement with Mr. Dixon, the adequacy of class counsel has not been established here.

In sum, Mr. Dixon has not established that his proposed class satisfies the Rule 23(a) prerequisites.

### 4.    Rule 23(b) Requirements

Because Mr. Dixon has failed to fully satisfy the requirements of Rule 23(a), the Court need not address whether under Rule 23(b)(3) common issues of law and fact predominate over individualized issues or whether a class action is superior to other vehicles available for adjudicating this controversy.  *See Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015) ("Because Rule 23(a) provides a gate-keeping function for all class actions, ordinarily [courts]

begin there and only turn…to Rule 23(b) after [the court is] certain that all of Rule 23(a)'s requirements had been met.")

For the reasons discussed above, Mr. Dixon has not met his burden under Rule 23, and his Motion for Class Certification, [112], is **DENIED**.

## II.
### MOTION TO COMPEL

### A.    Standard of Review

A party may file a motion to compel when another party fails to respond to a discovery request or responds evasively or inadequately. *See* Fed. R. Civ. P. 37. The Court has broad discretion in resolving discovery disputes. *Meyer v. Southern Pacific Lines*, 199 F.R.D. 610, 611 (N.D. Ill. 2001); *see also* *Gile v. United Airlines, Inc.,* 95 F.3d 492, 495-496 (7th Cir. 1996).

While Rule 37 does not place a time limit on filing a motion to compel, courts have recognized that such motions must be timely when viewed in light of the procedural posture of the case. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 647 (7th Cir. 2001); *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 332 (N.D. Ill. 2005) (collecting cases). As a general rule, motions to compel filed after the close of discovery are almost always deemed untimely. *Packman*, 267 F.3d at 647.

### B.    Discussion

Mr. Dixon has also recently – and belatedly – moved to compel Jefferson Capital to provide "each collection template letter sent by [Jefferson Capital] or a collection agency retained by [Jefferson Capital] on debts that were more than 6 years from the last payment," as well as:  "1) the number of persons [who] sent that particular letter; 2) the collection agency who sent the letter; 3) the collection letter template; and 4) the amount of money collected from the consumer after the collection letter was sent."  [Filing No. 167 at 25.]  Mr. Dixon argues that Jefferson Capital's

representative "failed and/or refused to provide responses during her deposition to questions that were set out in the 30(b)(6) Notice of Deposition," [Filing No. 167 at 10.], and that "[w]ithout the requested discovery, [he] will be prejudiced and cannot properly litigate his case." [Filing No. 167 at 15.]

Defendants respond that Mr. Dixon's motion is "a redundant and abusive motion" which fails to comply with Local Rule 37-1 and seeks "additional class information twice denied" by the Court and "does so more than three months after the discovery deadline and while his class certification motion is pending." [Filing No. 174 at 14-17.]

Mr. Dixon replies that he is "entitled to all discovery regarding any nonprivileged matter that is relevant to [his] claims or defenses" and that he "substantively [met] the requirements of N.D. Ind. L.R. 37-1." [Filing No. 179 at 8-15.] Mr. Dixon also argues that his motion is timely because the Court, in its denial of his request to extend discovery, noted that: "[i]f motions practice over discovery disputes ensues, the court will note that the plaintiff timely raised these matters with the court." [Filing No. 179 at 15 citing Filing No. 138.]

The fact discovery deadline in this case was July 23, 2021. [Filing No. 138.] This deadline has been extended five separate times. [Filing No. 25; Filing No. 46; Filing No. 49; Filing No. 61; Filing No. 106.] Despite these many extensions, Mr. Dixon waited until July 24, 2021 to complete the 30(b)(6) deposition of a Jefferson Capital representative, during which the representative did not produce any responsive documents. [Filing No. 167 at 2.] The Court denied Mr. Dixon's request to extend discovery on July 30, 2021. [Filing No. 138.] On August 27, 2021 and September 12, 2021, Mr. Dixon sent meet-and-confer letters to Jefferson Capital, requesting the documents at issue. [Filing No. 167 at 2-3.] Mr. Dixon then waited until November 1, 2021 to file the instant motion to compel. [Filing No. 167.]

23

The Court finds that Mr. Dixon's Motion to Compel is untimely and does not comply with Local Rule 37-1, and, therefore, should be denied.  It is unclear to the Court why Mr. Dixon would argue that he complied with another district's local rules in support of his motion, particularly given that this District has different requirements prior to filing formal discovery motions.  [Filing No. 179 at 6-12.]  In this District, Local Rule 37-1 requires counsel to contact the Magistrate Judge to request a conference to resolve discovery disputes before filing a motion to compel.  S.D. Ind. Local Rule 37-1.  Moreover, in the event that a dispute is not resolved by conference, any motion raising the discovery dispute "must contain a statement setting forth the efforts taken to resolve the dispute, including the date, time, and place of any discovery conference and the names of all participating parties. . [t]he court may deny any motion raising a discovery dispute that does not contain such a statement."  S.D. Ind. Local Rule 37-1.  Mr. Dixon failed to include the required statement of his efforts to resolve the discovery dispute at issue.  [Filing No. 167.]  Mr. Dixon's motion is therefore denied.

Additionally, Mr. Dixon's motion is untimely.  While the Court previously noted that Mr. Dixon "timely raised" the existence of discovery disputes with the Court, the Court's previous order does not excuse Mr. Dixon's delay moving to compel.  Given Mr. Dixon's position that he "cannot properly litigate his case" without this information, the Court is perplexed that he waited over three months after the Court's order to move to compel production.  Even more perplexingly, Mr. Dixon agreed to conduct the deposition at issue after moving the Court for certification of his class and after the window for discovery had closed.  Given Mr. Dixon's characterization of the evidence he seeks through his Motion to Compel, the Court finds it odd that Mr. Dixon would delay seeking this information from Jefferson Capital and delay seeking the Court's involvement.

In light of this delay, the Court cannot find that Mr. Dixon has acted with reasonable diligence under the circumstances. The Court further finds that the requested information seeks discovery under Mr. Dixon's previous class definition and, therefore, Mr. Dixon's altered class definition renders the request moot.

Accordingly, Mr. Dixon's Motion to Compel, [167], is **DENIED**.

### III.
#### CONCLUSION

For the foregoing reasons, the Court **DENIES** Mr. Dixon's Motion for Class Certification, [112], **DENIES AS MOOT** Defendants' Motion for Leave to File a Supplemental Brief, [150], and **DENIES** Mr. Dixon's Motion to Compel, [167].

Date: 12/14/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

25